UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| AARON ISBY-ISRAEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:13-cv-00172-WTL-DKL |
| ) | |
| BRUCE LEMMON, et al., ) | |
| ) | |
| Defendants. ) | |

**Entry Granting Defendants' Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff Aaron Isby-Israel ("Mr. Isby-Israel"), an inmate at the Wabash Valley Correctional Facility ("Wabash Valley") and self-described Hebrew Israelite, filed this civil action alleging that he has been denied a Kosher diet. He argues that the denial of a Kosher diet violates his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc–5, and under the First Amendment, pursuant to 42 U.S.C. § 1983.[1] Mr. Isby-Israel seeks money damages and injunctive and declaratory relief. Mr. Isby-Israel has sued 1) Bruce Lemmon, the Commissioner of the Indiana Department of Correction ("IDOC"); 2) Dr. Stephen Hall, Director of Religious Services for the IDOC; and 3) Robert Nemergut, the Chaplain at Wabash Valley, in their official capacities, for injunctive and declaratory relief. He also seeks

---

[1] In his summary judgment briefing, Mr. Isby-Israel complains about the denial of Passover Meals on April 4, 2015, events that occurred in 2003, and his inability to attend worship services with other Hebrew Israelites. See dkt. 97 at pgs. 10-11. These claims are outside the scope of this litigation. See dkt. 88. The focus of this action is on IDOC's approval of Mr. Isby-Israel's Kosher diet request, not the recognition of specific holidays.

1

money damages from Dr. Hall and Chaplain Nemergut in their individual capacities. The defendants seek resolution of this action through summary judgment.

The defendants argue that they are entitled to judgment as a matter of law because Mr. Isby-Israel refuses to complete the form that would allow the IDOC to process his Kosher diet request. Mr. Isby-Israel opposes the motion for summary judgment arguing that requiring him to sign this form violates his rights. Dkt. 96 at p. 2. For the reasons explained below, the defendants' motion for summary judgment [dkt. 91] is **granted.**

## I. Standard of Review

"As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted). Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. Rule 56(c)(2). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. See *Harney,* 526 F.3d at 1104 (citing cases). When the moving party has met the standard of Rule 56, summary judgment is mandatory. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

"In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney,* 526 F.3d at 1104 (internal citations omitted). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## II. Undisputed Facts

Applying the standards set forth above, the following facts are undisputed.

The IDOC's policy is that "[o]ffenders shall be free to practice and adhere to the requirements of a personal religious belief within the limitations of these administrative procedures. No offender shall be required to, or coerced into adopting or participating in any religious belief or practice."

Mr. Isby-Israel identifies himself as a Hebrew Israelite. He was introduced to the religion through the teachings of Ben Yahweh's Temple of Yahweh. Mr. Isby-Israel wants a Kosher diet and testifies it is necessary to practice his religion. Mr. Isby-Israel states that "keeping Kosher in my diet is an intrinsic element of my faith." Dkt. 96-1 at p. 3.

**A. Kosher Diet**

Indiana state prisoners may request and receive certain diets, including a Kosher diet, for religious purposes. Offenders who want a Kosher diet must submit a written request through the offender's facility chaplain, which will then be reviewed by the Kosher Review Committee at the IDOC's Central Office.

The written request must be submitted on an "Offender Request for Religious Accommodation" form. This form lists the following questions:

1. Name:

2. DOC Number:

3. Facility:

4. Religious Preference:

5. When, where and how did you become a member of this religion?

6. Name and address of your religious leader/spiritual advisor, if any:

7. Please state the kind of religious accommodation you are requesting:

8. If you are requesting a Kosher diet, include in your response what foods are permitted, what foods are not permitted, what makes food Kosher, what causes food to become un-Kosher.

9. How does eating Kosher relate to the practice of your religion?

The form then provides the following:

My signature below indicates that I understand that if I am approved for a Kosher diet I can be removed from this diet if I (a) consume any foods that are non-Kosher, (b) eat at special events such as Gospel Echoes, Kairos or facility picnics, (c) give, trade, sell or barter my meal to another person, (d) order any foods from commissary that are non-Kosher, (e) order any food from food sales.

_____     _____
Signature                                                                   Date

Dkt. 91-3, at p. 2. This Offender Request for Religious Accommodation form is not inconsistent with the injunction following a class action in *Willis, et al, v. Commissioner, Indiana Department of Correction, et al.,* 1:09-cv-815-JMS-DML (dkt. 113, stating that the IDOC maintains the option to screen the religious sincerity of inmates who request Kosher meals before providing them). In that case, the following permanent injunction was ordered:

> The Commissioner of the Indiana Department of Correction ("Commissioner") must supply a Kosher meal option for all meals served within any facility within the Department of Correction. The Kosher meals must be certified as Kosher by appropriate religious authorities selected by the Indiana Department of Correction, which may be accomplished by purchasing pre-packaged meals certified as Kosher. If the meal option is not utilized, the Kosher meals must be recertified as Kosher at the frequency specified by the religious authorities.
> The Commissioner must provide certified Kosher meals to all inmates who, for sincerely held religious reasons, request them in writing. The request shall be directed to their facility's chaplain, or to another person designated by the superintendent.

*Willis,* 1:09-cv-815-JMS-DML (S.D. of Ind. Dec. 8, 2010). After the Kosher Review Committee grants a request, the offender will be provided a personal preference diet card, which may be suspended or confiscated if the offender demonstrates a pattern of consuming allegedly prohibited food, orders prohibited food from the commissary, or abuses the diet card in some other manner.

5

The IDOC Central Office has no record of a written request from Mr. Isby-Israel seeking a Kosher diet. The IDOC typically requires an offender to take the step of filling out and signing the Religious Accommodation form, but the IDOC was able to gain the necessary information from Mr. Isby-Israel's October 14, 2015, deposition and, given the circumstances, the IDOC processed Mr. Isby-Israel's "request" for a Kosher diet outside the standard process. Mr. Isby-Israel's request for a Kosher diet was approved on January 13, 2016, and food service was notified.[2]

### B. Defendants

Defendant Robert Nemergut is a former chaplain at Wabash Valley, serving in that role for fifteen years, from 1997-2013.

Defendant Bruce Lemmon is the IDOC Commissioner.

Defendant Stephen Hall served as Director of Religious and Volunteer Services for the IDOC from September 2002 to March 2013.

### C. Mr. Isby-Israel's Requests for Kosher Diet

Beginning on July 4, 2011, and continuing through April 13, 2015, Mr. Isby-Israel made his request for a Kosher diet known. He wrote to Chaplain Nemergut, he filed grievances, he wrote letters, and he turned in unsigned Offender Request for Religious Accommodation forms. Mr. Isby-Israel testified that he filled out the Offender Request for Religious Accommodation form on

---

[2] Mr. Isby-Israel's motion to strike the new evidence reflecting that his Kosher diet request has been approved [dkt. 100] is **denied.** The injunctive relief sought from the defendants was necessarily the approval of this request. The IDOC was obligated to inform the court when the injunctive relief component of this action became moot.

July 31, 2011, August 17, 2011, and in May 2013, handed them to Chaplain Nemergut for processing.

Mr. Isby-Israel did not, however, complete a **signed** Offender Request for Religious Accommodation form. Mr. Isby-Israel refused to sign the form even though he was told "that as a prerequisite to . . . receiving my Kosher diet I had to meet a 'recognition' standard, by filling-out a form answering a series of questions of the meaning and requirement of Kosher, and sign a contract clause waiving my constitutional rights and vowing to DOC not to eat non-Kosher food. Nemergut provided me with these offender request for religious accommodation forms." Dkt. 96-1 at p. 5. On August 22, 2011, Mr. Isby-Israel composed a letter to Teresa Littlejohn, That letter speaks for itself:

8/22/2011

To: T. LittleJohn
   W.V.C.F. Grievance
FR: AARON Isby #892219
   SCU A909

RE: Denial in Providing Kosher meals
   2nd Informal complaint

Mrs. LittleJohn:

On 7/4/2011, over a month ago i submitted a request with the Religious Services Chaplain R. Nemergut at W.V.C.F., urging that i be Provided Kosher meals, with respect to my Hebrew Israelite religion in accordance with Lev. 11, and Deut. 14, tenets of the Hebrew Bible. Chaplain Bob, has been to my Cell (SCU A909) twice on 7/28/11 and 8/17/11, with Some Contract; listing questions, that i have to answer and sign in order for me to qualify for a Kosher meals. This contract seems to be Something that Chaplain Bob put together himself and i contend that Chaplain Bob is not a qualified representative of my Hebrew Israelite Community, and he has no right to impose his Christian requirements upon me! I find this Contract racist, discriminatory and anti-shemetic, the 1st Amendment to the U.S. Constitution and the Indiana Constitution, do not require me to sign a Contract for Kosher meals. Policy 04-01-301, "The Development And Delivery of Food Service", only require that i fill-out a request For Personal Preference Diet," form, Chaplain Bob has refuse to Provide me with this Form? I have cited the authority in the Hebrew Torah that requires my meals to be Kosher, This is a tenet of the Hebrew Israelite Diet, and i ask that you direct Chaplain Bob to respect my Constitutional rights and religious beliefs, and to approve my Kosher meals and to cease obstructing my rights to free exercise of religion!

Aaron Isby-Israel

Attachment #4

Dkt. 91-7 at p. 1.

8

There is no genuine dispute that Mr. Isby-Israel refused to complete the form by signing it. He explained at his deposition, "And that's the problem. That contract clause, I'm not signing that." Dkt 91-4 at p 16-17. Mr. Isby-Israel further testified:

```
13  A  I've been doing this 27 years.  I don't need nobody
14     to tell me how to worship and how to -- you know
15     what I'm saying -- live my lifestyle, man.  So I
16     don't have no problem with answering no questions
17     because, like I said, you know, that ain't -- that
18     ain't the issue.  The issue is, yeah, I've got a
19     problem with that contract clause.  That's a
20     contract clause, and, no, I'm not signing no
21     contract clause.  I'm not signing no contract
22     clause.  I'll fill it out and turn it in because
23     that's all that's necessary.  That's all that's
24     required.  That's all that's needed.
```

Dkt. 91-4 at p. 18.[3]

### III. The First Amendment and RLUIPA

The defendants argue that Mr. Isby-Israel's intransigence, not any effort by the IDOC to preclude Mr. Isby-Israel from receiving any diet, is the cause of Mr. Isby-Israel's alleged injury. Mr. Isby-Israel argues that requiring him to sign the Offender Request for Religious Accommodation form violates his rights.

---

[3] Mr. Isby-Israel's testimony that he has followed every procedure required of him to obtain a Kosher diet is disregarded because it is contradicted by his own deposition testimony and prior written statements. Dkt. 96-1 at p. 8.

As noted, Mr. Isby-Israel raises both First Amendment and RLUIPA claims in this action.

**A. Background**

The First Amendment provides, in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. Amend. I. The Free Exercise Clause of the First Amendment prohibits the government from imposing a "substantial burden" on a "central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). But, "the religious freedom guaranteed by the Free Exercise Clause of the First Amendment does not require religious exemptions from facially neutral laws of general applicability." *Korte v. Sebelius*, 735 F.3d 654, 671 (7th Cir. 2013) (citing *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 883–90 (1990)). Thus, neutral laws of general applicability need only satisfy the basic test for rationality that applies to all laws; if a law incidentally burdens the exercise of religion, the Constitution does not require an exemption. *Id.* (citing *Smith*, 494 U.S. at 878–79, 888–90).[4]

RLUIPA provides greater protections to a prisoner than the First Amendment. RLUIPA prohibits prisons that receive federal funding from substantially burdening an inmate's religious exercise unless the step in question is the least restrictive way to advance a compelling state

---

[4] In *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), the Supreme Court established the test for evaluating the constitutionality of regulations that infringe on prisoners' First Amendment Rights. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349. To determine whether a challenged regulation is valid, this Court will consider four factors: (1) whether the regulation has a logical connection to the legitimate government interests invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmates; (3) the impact that accommodation of the asserted constitutional rights will have on other inmates, guards, and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimus* cost to valid penological interests. *See id.* at 350–52 (citing *Turner v. Safley*, 482 U.S. 78, 89–90 (1987)).

interest. 42 U.S.C. § 2000cc(a); *see also Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006) (citing *Cutter v. Wilkinson*, 544 U.S. 709 (2005); *Lindell v. McCallum*, 352 F.3d 1107 (7th Cir. 2003)). The First Amendment, by contrast, does not require the accommodation of religious practice: states may enforce neutral rules. *See Borzych*, 439 F.3d at 390 (citing *Employment Division,* 494 U.S. 872).

### B. Substantial Burden Test

Claims under both the First Amendment and RLUIPA are evaluated under the substantial burden test, which requires the plaintiff to show that the defendants substantially burdened his free exercise rights. *See Patel v. Bureau of Prisons*, 515 F. 3d 807, 814 (8th Cir. 2008) ("[T]he same definition of 'substantial burden' applies under the Free Exercise Clause, RFRA, and RLUIPA."). At a minimum, a substantial burden exists when the government compels a religious person to "perform acts undeniably at odds with fundamental tenets of [his] religious beliefs." *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972). Towards the other end of the spectrum, "a substantial burden on the free exercise of religion … is one that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs." *Koger v. Bryan,* 523 F.3d 789, 798-99 (7th Cir. 2008) (internal quotation and citation omitted); *see also Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981); *Nelson v. Miller*, 570 F.3d 868, 878 (7th Cir. 2009). In discussing RLUIPA, the Seventh Circuit has held that a law, regulation, or other governmental command substantially burdens religious exercise if it "bears direct, primary, and fundamental responsibility for rendering [a] religious exercise . . .

effectively impracticable." *Korte*, 735 F.3d at 683 (citing *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)).

Mr. Isby-Israel alleges that the IDOC denied his request for a Kosher diet and that the denial of his diet substantially burdens his religion. But the undisputed record reflects that Mr. Isby-Israel refused to sign the Request for Religious Accommodation form. The defendants argue that the IDOC has not denied Mr. Isby-Israel a diet; rather, Mr. Isby-Israel has simply refused to properly submit his request for a Kosher diet and there has been no denial at all.

Mr. Isby-Israel carries the burden of showing that prison officials burdened his religious beliefs. 42 U.S.C. § 2000cc-2(b). He cannot meet this burden. Requiring Mr. Isby-Israel to sign his Offender Request for Religious Accommodation form before accommodating his religion by providing a Kosher diet is not a substantial burden. Mr. Isby-Israel wanted a Kosher diet. He had no problem filling out and returning the correct form, but he refused to sign it. His correspondence and deposition reflect that he understood that his request for a Kosher diet would not be processed unless he signed the form. There is simply no plausible basis upon which a reasonable trier of fact could conclude that signing this form substantially burdened his exercise of religion.

Mr. Isby-Israel argues that his rights were violated, "by requiring those of the Hebrew faith to sign a contract vowing not to violate their Kosher laws and if they do, agreeing to punishment by DOC, before they can receive approval for a Kosher diet." Dkt. 97 at p. 24. But Mr. Isby-Israel is mistaken. The form simply required Mr. Isby-Israel to indicate that he understands that he may be removed from the Kosher diet if he eats foods that are non-Kosher, eats at special events where the food served is not Kosher, if he gives, trades, sells or barters his meal to another person, if he orders foods from commissary that are non-Kosher, or if he orders food from food sales. The form

12

says that he can be removed, not that he will be removed. By signing the form, the inmate is not agreeing that future removal from the Kosher diet program for eating non-Kosher food is appropriate, it only requires the inmate to acknowledge that the IDOC may take that action.

Mr. Isby-Israel argues that requiring him to agree to only eat Kosher food is arbitrary, irrational and unconstitutional. See dkt. 96-1 at p. 8. This argument is frivolous. He is seeking an accommodation to practice his religion in the form of a Kosher diet. If he were to eat non-Kosher foods this would call into question his need for the accommodation. There is nothing inappropriate about the IDOC (and by extension, Chaplain Nemergut) inquiring into the sincerity of a prisoner's professed religiosity to determine whether the asserted basis for a requested accommodation is authentic. *Cutter v. Wilkinson*, 544 U.S. 709, 725 (2005). Prison officials, even after determining a prisoner's religious belief is sincere, "might be entitled to withdraw an accommodation if the claimant abuses the exemption in a manner that undermines the prison's compelling interests." *Holt v. Hobbs*, 135 S.Ct. 853, 867 (2015).

Mr. Isby-Israel further argues that the request form forces inmates of the Hebrew faith to waive their constitutional rights to challenge any arbitrary removal from the Kosher diet in the future. Dkt. 97 at p. 24. He argues that the fact that a prisoner violates their religious beliefs by eating non-Kosher food does not mean they are insincere, it means they are a sinner. Dkt. 97 at p. 29 (citing *Young v. Lane,* 733 F. Supp. 1205, 1209 (N.D. Ill. 1990)). Mr. Isby-Israel is mistaken. Nothing in the request for accommodation required Mr. Isby-Israel to waive his constitutional rights or prohibits him from challenging any future arbitrary removal from the Kosher diet.

Finally, Mr. Isby-Israel suggests that this is a frivolous burden that is not placed on Christian inmates. Dkt. 97 at p. 18. But, there is no suggestion that if a Christian requested a non-

13

standard diet for religious reasons, that the Christian would not be required to follow the same standards.

### C. RLUIPA claims are moot.

In any event, even if signing the Offender Request for Religious Accommodation form created a substantial burden under RLUIPA, those claims are now moot. After Mr. Isby-Israel provided all the required information in his deposition taken in this case on October 14, 2015, the IDOC reviewed and approved Mr. Isby-Israel's "request" for a Kosher diet, using the information from his deposition.

Although RLUIPA provides greater protections to a prisoner than the First Amendment, the remedies available are more limited. More specifically, the claim for money damages under RLUIPA must be denied. *See Sossamon v. Texas*, 131 S.Ct. 1651 (2011) (money damages are not available in suits against states under the RLUIPA). In addition, the Seventh Circuit "declines to read RLUIPA as allowing damages against defendants in their individual capacities" because reading the statute otherwise "would raise serious questions regarding whether Congress had exceeded its authority under the Spending Clause." *Nelson v. Miller*, 570 F.3d 868, 885-89 (7th Cir. 2009).

The only relief available to Mr. Isby-Israel if he prevails on his RLUIPA claims is for injunctive relief. That relief has already been provided. The record reflects that Mr. Isby-Israel's Kosher diet request was approved on January 13, 2016. Because the only relief available under RLUIPA has been provided, the RLUIPA claim is denied as moot.

### D. Qualified Immunity under 42 U.S.C. § 1983.

Similarly, the claim for money damages against the defendants Dr. Hall and Chaplain Nemergut (in their individual capacities) under 42 U.S.C. § 1983 for violating Mr. Isby-Israel's First Amendment rights must also be denied because the defendants are entitled to qualified immunity.

To defeat a defense of qualified immunity, a plaintiff must take two steps. First, the plaintiff must first allege and then show facts amounting to an actual violation of his or her constitutional rights. Second, the plaintiff must show that the violation of constitutional rights was clearly established under applicable law at the time and under the circumstances that the defendant official acted. *Pearson*, 555 U.S. at 232. "The contours of a 'clearly established' right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.'" *Sivard v. Pulaski County*, 17 F.3d 185, 189 (7th Cir. 1994). In other words, the plaintiff must show not only that his constitutional rights were violated, but that any reasonable official under the circumstances would have realized that his rights were being violated.

As discussed above, the IDOC's requirement that Mr. Isby-Israel fill out a form before his request for a religious accommodation is considered does not impose a substantial burden on his religion. Thus, no constitutional violation occurred and the defendants did not violate a clearly established right, when they required Mr. Isby-Israel to sign the form before considering his request for a Kosher diet. Accordingly, the defendants are entitled to qualified immunity and any claim for money damages is **denied.**

15

## IV. CONCLUSION

There is in this case no genuine issue of material fact and the defendants are entitled to judgment as a matter of law. The motion for summary judgment [dkt. 91] is **granted.**

The motion to strike [dkt. 100] is **denied.**

The motion to withdraw attorney appearance of Caryn N. Szyper [dkt. 103] is **granted.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 6/1/16

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

AARON ISBY-ISRAEL
892219
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838